STATE EX REL. BRAY ET AL., APPELLANTS, *v.* JOSEPH V. LONG, ET AL., RESPONDENTS.

[Submitted March 28, 1898. Decided March 31, 1898.]

*School Districts— Constitutionality. of Election Laws—Title of Bill.*

1.   Ordinance 1, Section 24 and Article 11, Section 1, which provides for the establishment and maintenance of a general, uniform and thorough system of public, free common schools, does not prohibit the enactment of a law classifying school districts for the purposes of the election of trustees according to population, so long as the

law provides for a reasonable classification and is reasonable and uniform in its operation and effect upon all districts within the same classification—although at the time of the passage of the act, only a few districts would be included within the law.

2. A law which classifies school districts according to population and provides a system for the election of trustees which is uniform for all districts within the same class is not a local or special law within the meaning of Section 26, Article 5 of the Constitution, although the law provides that the elections in the different classes shall be held under different supervision.

3. The title of a bill was as follows, "An Act to amend Sections 1770 and 1782 inclusive, of Article 4, Chapter 6." etc. *Held*, that the title fairly stated the subject of the legislation, and that the omission to specifically enumerate the intermediate sections did not make the bill invalid as to them.

4. An election law which provides that a resident of the district who is not a citizen of the United States may register upon his taking an oath that he is entitled to become a citizen of the United States and that it is his honest intention to become such before the school election day of that year, is not in violation of Section 2, Article 9 of the State Constitution which provides that no person except citizens of the United States shall have the right to vote.

5. The court refused to decide whether that section of the law which fixed the term of office at three years is in violation of Section 6, Article 16 of the State Constitution, which provides that "The Legislative Assembly may provide for the election or appointment of such other county, township, precinct and municipal officers as public convenience may require, and their term of office shall be as required by law, not in any case to exceed wo years, etc." *Held*, however, that, even if that section is in violation of the section of the constitution referred to, the remainder of the act is not thereby rendered invalid; but, as the part fixing the term is severable, the law is valid for the terms prescribed, not in conflict with the constitution.

6. *Held*, further, that, even if one section of the act could be construed to be an attempt to increase the salary of the trustees who held over, and, therefore, in violation of Section 31, Article 5 of the Constitution, the remainder of the act, including the provision for the election of new trustees, would not thereby be rendered invalid.

7. Section 5, Article 3 of the Constitution provides that "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." The act of 1897 provides for not less than two nor more than five polling places in districts of the first class. It appeared that the facilities were somewhat inadequate to accommodate those who wished to vote; but it further appeared that those who were not able to vote did not attempt to do so until the latter part of the day. *Held*, that the law would not be held to be in conflict with the section of the constitution referred to.

8. Section 27, Article 5 of the constitution provides that "the presiding officer of each house shall in the presence of the house over which he presides sign all bills and joint resolutions passed by the Legislative Assembly immediately after their titles have been publicly read, and the fact of signing shall be at once entered upon the journal. The bill in question bore the signature of the presiding officer of each house, but the journal omitted to show that the bill was signed as required; it was not claimed, however, that the bill was not duly signed. *Held*, that the presumption is that the legislature and the presiding officers did their duty, and that the bill was regularly passed.

*Appeal from District Court, Silver Bow County.   William Clancy, Judge.*

QUO WARRANTO by the state, on the relation of Edwin Bray, O. J. McConnell, F. E. Curtis, and J. A. Baker against Joseph V. Long, John B. Frederic, Michael Burke and Au-

gustus T. Morgan.    From a judgment for defendants plaintiff and relators appeal.    Affirmed.

Statement of the case by the court.

Proceedings in *quo warranto*.    The relators allege that on the first Saturday of April, 1894, an election was held within and for School District No. 1, Silver Bow county, pursuant to the provisions of the law, for the election of trustees of said school district for the term of three years immediately succeeding said election; that at said election the plaintiffs Bray, McConnell and Curtis received the greatest number of legal votes cast for trustees of said school district for the term aforesaid, and were duly declared elected, and were duly qualified to serve, and did qualify as required by law, and entered upon the discharge of the duties, until prevented from continuing to discharge the duties by the wrongful acts of the defendants; that on April 17, 1897, the defendants usurped the offices of school trustees, held as aforesaid by the relators, and without authority held and still hold and exercise the functions of school trustees.    The prayer of the complaint is for a judgment that the defendants are not entitled to said offices, and that they be ousted therefrom, and that the relators are entitled to said offices, and that they be put into possession of the same.

The answer contains a denial of the material allegations of the complaint, and affirmatively avers that on the first Saturday of April 1897, an election for school trustees was duly held for School District No. 1, Silver Bow County, under the provisions of "an act to amend Section 1770 and 1782, inclusive of Article 4, Chapter 6, Title 3, Part 3 of the Political Code, relating to the election of school trustees, and to amend said article by adding thereto six sections," etc., approved March 6, 1897; that at said election, which was regularly held, the defendants, who had been duly nominated and who were duly qualified, were elected as school trustees, and the result of such election was duly declared, and the said defendants did duly qualify pursuant to law, and ever since April

17, 1897, have been in the possession and entitled to the possession of their respective offices as school trustees of said school district, and have ever since discharged the duties pertaining to said offices; and that the defendants Long, Frederic and Burke were each elected for the term of three years as the successors of the relators Bray, McConnell and Curtis. It is further alleged that the relators voluntarily surrendered their offices to the defendants.

The relators denied the affirmative matter in the defendants' answer, and, in affect, averred that the act under which the defendants claim to have been elected school trustees is unconstitutional and void.

The cause was tried to the court without a jury on March 1, 1898. Evidence was heard, and judgment was rendered in favor of the defendants and against the relators. The plaintiff and the relators appeal from the judgment. The appeal to this court was submitted three days ago.

*E. N. Harwood*, for Relators.

*Emmett Callahan*, for Respondents.

PER CURIAM.—The questions raised by this appeal are very important, and of public concern. They affect several school elections in the state, and that the electors may be correctly guided as to what laws obtain controlling school elections to be held a few days hence, we are asked to decide the case at once. We shall do so, having given our attentive consideration to the points presented since their submission to the court. But, owing to the pressure of time, we shall very briefly and succinctly review the several arguments relied upon, and urged upon our consideration.

1. It is conceded that the principal question involved is the constitutionality of the act of the Fifth Legislative Assembly designated as "Senate Bill No. 56," entitled "An act to amend Sections 1770 and 1782 inclusive, of Article 4, Chapter 6, Title 3, Part 3 of the Political Code, relating to the election of school trustees, and to amend said article by adding

thereto six additional sections with reference to the election of school trustees, providing for registration in certain districts, and compensation for school trustees in certain districts, and repealing all acts and parts of acts in conflict herewith.'' (Laws of Montana, Fifth Session, page 136.) The relators challenge the constitutionality of said law upon eight grounds. We shall examine them *seriatim*:

1.   It is said that the law is unconstitutional because it breaks and destroys the system and uniformity required by Constitutional Ordinance 1, Section 4 and Article 11, Section 1, which requires provision to be made for the establishment and maintenance of a uniform system of public schools, and that the Legislative Assembly shall establish and maintain a general, uniform and thorough system of public, free, common schools.

We do not believe that by the constitutional section cited there is any restriction upon the right of the Legislative Assembly to classify school districts for purposes of election of trustees with relation to population, so long as the law passed makes a reasonable classification, and is reasonable and uniform in its operation and effect upon all districts within such classification made. The classification may only extend to a few districts this year, yet that does not impair the validity of the law; for another year it may govern many more districts, and must, if they have sufficient population to be brought within the classification provided for. (*State* v. *Donavan* (Nev.) 15 Pac. 783.) Nor do we think such a law breaks or destroys the system in the establishment and maintenance of the public schools. The uniformity and thoroughness of a system of public schools are not interfered with by providing for a general and reasonable method of the election of trustees, even if the methods of election vary according to the number of inhabitants in the several districts.

2.   It is said the law is local and special, hence is unconstitutional, under Section 26, Article 5 of the Constitution.

We hold to the contrary. It is not local, for it may and does apply to any or all school districts of certain populations

within the state. It is not special, because it applies without discrimination to all districts within any of the several classifications made. It does not regulate elections by prescribing different voting qualifications in any one district from those prescribed in other districts. Its provision in this respect control in every district within the several classifications made.

The mere fact that in districts of the first class the election shall be under the supervision of the Board of County Commissioners, while in districts of the second class elections are under supervision of school trustees, does not make it a local or special law, or destroy the uniformity and system in respect to the common schools. A particular method of supervision of an election, if common to all districts of a certain class, does not change the system of the schools at all; nor does it make the law defining the power of such supervision, and vesting it in the county commissioners, a special law.

3. It is argued that, excepting Sections 1770 and 1782, the bill is unconstitutional because the title is, "An act to amend Sections 1770 and 1782, inclusive, of Article 4, Chapter 6, Title 3, Part 3 of the Political Code," etc. The omission to specifically enumerate the sections between Sections 1770 and 1782, and which are very plainly covered by the word "inclusive," is not fatal to the bill. No one could misunderstand the title, or be misled by the words of it. It fairly apprised one of the subject of the legislation, and that the entire number of sections of a certain specified article of the code, from Section 1770 to 1782, inclusive, thereof, were to be amended.

4. It is next argued that it is unconstitutional in that it permits persons to vote who are not qualified electors under the constitution of the state. The bill requires registration of voters in certain districts.

We quote the oath for registration. It is as follows: "I am a citizen of the United States or that I am entitled to become a citizen of the United States, and it is my honest intention to become such before the school election day of this

year; that I am of the age of twenty-one years, and will have actually and not constructively, been a *bona fide* resident in Montana twelve months, and in the school district thirty days next preceding the day of election, and that I am not registered elsewhere in this school district for this election year, so help me God.''

It is also provided by section 1778 that : ''In districts of the first class the person desiring to vote shall at the time he or she presents his or her ballot, announce his or her name, and the judges of election, if they find such name on the official 'check list,' or if not and he or she takes the oath herein prescribed, one of the judges shall take the ballot and deposit it in the ballot box, and the clerk shall immediately write the name of such person on the poll list, and one of the judges shall write opposite the said name on the official check list the word 'Voted.' * * * Provided, however, that if any person, otherwise qualified to vote, makes oath before one of the judges that he or she registered at any registry precinct in such district, naming it, before a registry agent, giving his name, to vote at said election, and that his or her name does not appear correctly on said check list, or has been omitted therefrom, or that by reason of absence or sickness during the period of registration he or she was unable to register, the judges of election shall make an entry opposite his or her name on the poll list to the effect that he or she was sworn and voted and shall permit him or her to vote.''

The special objection here pressed is that by these provisions just quoted persons who are not citizens of the United States may vote. But we must take the law together in its several parts, and construe it as enacted in harmony with, and not in violation of, the constitution. Neither the provisions requiring registration of voters, nor the oath of registration, authorize a person to vote who is not entitled to that privilege under the constitution. The object of permitting one to register, who, although not a citizen at the time of the registration, yet intends to become such before election day, is to authorize one to register who will be entitled to

vote if between the time of registration and of election he becomes a citizen of the United States. The statute only facilitates registration, and secures to one qualified to vote on election day that right. The right of challenge is preserved (Section 1779), and by the oath put upon a challenge the voter must swear that he is a citizen of the United States. Thus, it is plain there was no intent or effort to lessen the qualifications of voters.

5. The law is assailed because it fixes the term of school trustees at three years; the contention of appellants being that Article 16, Section 6, of the Constitution, limits the term of such officer to two years. We express no opinion upon the term of office of school trustees pursuant to the provision of the law under examination. At some future time that question may directly arise. We are satisfied, though, that, even if the term cannot run for three years, but does run for two years only, the whole law cannot be overthrown; but, as the part fixing the term is severable, the law will be upheld as a valid statute providing for the election of trustees for the terms prescribed, not in conflict with the constitution.

6. Article 5, Section 31 of the Constitution, is as follows: "Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election or appointment; provided, that this shall not be construed to forbid the Legislative Assembly from fixing the salaries or emoluments of those officers first elected or appointed under this constitution, where such salaries or emoluments are not fixed by this constitution."

This clause is violated, say the appellants, because the statute (Section 1787) gives to each of the trustees who have been elected prior to 1897, and who held over after the elections of that year, the sum of four dollars for each meeting of the board of trustees which he or she may attend. Granting, for the sake of argument, that the section of the statute cited attempts to increase the salary of trustees who held over, no portions of the law, except those pertaining to increased fees,

could be held invalid, while, as to trustees elected under the law of 1897, the statute is clearly constitutional.

7.   It is also vigorously urged that the bill is unconstitutional because it "prevents the free exercise of the right of suffrage" as guaranteed by Section 5, Article 3 of the constitution, which provides as follows: "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

The argument of the learned counsel for appellants upon this feature of the case is that "the provisions of the act debarred and excluded some 4.000 electors of said school district from going to the polls and casting their votes at the school election attempted to be held pursuant thereto, at which election respondents claim to have been chosen trustees." It appears from the evidence that there was an unusual interest taken in the result of the election, and that at divers times during the day large numbers of voters crowded about the several voting places, and that when the polls closed a number of persons who had stood in line some time awaiting their turns to vote had not cast their ballots, and were unable to do so.   There were five voting places, and no doubt the facilities were somewhat inadequate, to accommodate those who wished to vote; but as the complaint against the law in this respect is really based upon inconveniences imposed upon electors who, for the most part, did not attempt to vote until the latter part of the day, we cannot hold the law unconstitutional for the reasons asked.

8.   We pass now to the final ground urged by appellants, which is that Senate Bill No. 56 never was passed by the Legislative Assembly in the manner required by the constitution.

The constitution provides that "the presiding officer of each house shall in the presence of the house over which he presides sign all bills and joint resolutions passed by the Legislative Assembly immediately after their titles have been publicly read, and the fact of signing shall be at once entered upon the journal." (Constitution Article 5, § 27.)

The journal omitted to show the fact that the bill in question was signed by the presiding officer of each house. The enrolled bill bears the signatures of such presiding officers, and appellants do not aver or argue that the bill was not, as a fact, duly signed by such presiding officers.

The presumption is that the legislature and the officers thereof did their duty, and that the enrolled bill was regularly passed. This presumption is strong, and is indulged in by the judicial branch of the government as necessary to the "peace and good order of the state." Whatever may be the rule in respect to the power of the court to go back of an enrolled bill where it is directly charged that the journal misrepresents facts, yet in a case where the journal simply omits to affirmatively show that an act was done which ought to have been done, by the rule of the constitution prescribing the observance of a form of proceeding by the legislature, the courts cannot go behind the enrolled bill to ascertain whether such forms were observed, and will rely upon its attendant presumptions of regularity. (*State ex rel. Reed* v. *Jones*, 6 Wash. 452, 34 Pac. 201.)

In *In Railroad Co.* v. *Governor*, 23 Mo. 353, Judge Scott thus ably states the principle which controls: "Whilst the power of the courts to declare a law unconstitutional is admitted on all hands as being necessary to preserve the constitution from violation, yet such power is claimed and exercised in relation to laws which on their face show that the constitutional limits have been transcended. The reason of this principle limits the claim of jurisdiction to such cases. The constitution is designed to limit the powers of the government, and to confine each of the departments to its appropriate sphere. If the legislature exceeds its power in the enactment of a law, the courts, being sworn to support the constitution, must judge that law by the standard of the constitution, and declare its validity. But the question whether a law on its face violates the constitution is very different from that growing out of the noncompliance with the forms required to be observed in its enactment. In the one case a power is exer-

cised not delegated, or which is prohibited, and the question of the validity of the law is determined from the language of it.   In the other, the law is not in its terms contrary to the constitution; on its face it is regular, but resort is had to something behind the law itself in order to ascertain whether the general assembly, in making the law, was governed by the rules prescribed for its action by the constitution. This would seem like an inquisition into the conduct of the members of the general assembly, and it must be seen at once that it is a very delicate power, the frequent exercise of which must lead to endless confusion in the administration of the law.''

All other objections to the constitutionality of the law go to the failure of the legislature to observe certain forms in its enactment, but, as they are answered by the principle just laid down, it is unnecessary to fully mention or discuss them. The judgment is affirmed.

*Affirmed.*