ARMSTRONG, APPELLANT, *v.* POE, RESPONDENT.

(No. 2,425.)

(Submitted June 17, 1907. Decided June 28, 1907.)

[90 Pac. 758.]

*Contracts — Sale—Delivery—Breach—Tender—Variance—Non-suit—Admissions.*

Contracts—Sale—Delivery—Breach—Action for Price—Nonsuit.
    1. Plaintiff, in an action on a contract which called for the delivery of two separate bands of sheep, was properly nonsuited where it appeared that after delivering one band, he refused to, and never did, deliver the second, but, on the contra.y thereafter and before the entire contract had been performed by him took back the possession of the sheep delivered.

Same—Tender—When Unnecessary.
    2. Where the conduct of plaintiff, in an action on a contract, was such as to show that a tender by defendant, in conformity with the agreement, would have been useless, a tender was unnecessary.

Same—Variance—Failure of Proof.
    3. Where the complaint, in an action on a contract for the delivery of certain sheep, alleged that the sheep had been sold and delivered to defendant at an agreed price of $12,550, which had not been paid, and the proof showed an entirely different contract, to the effect that payment should be made by a draft on a brokerage firm in Chicago, which draft was never demanded, nor tendered by defendant, owing to plaintiff's conduct in the transaction, there was a variance amounting to a failure of proof, and nonsuit was properly entered.

Same—Admissions—Surplusage.
    4. *Semble:* Where defendant, in an action on a contract to recover $12,550, admitted an indebtedness of $525, but alleged that the latter sum did not become due until a month after the bringing of the action, this affirmative matter seems, in the absence of anything in

this allegation that the contract on which indebtedness was admitted, constituted any part of the main transaction sued upon, to have been irrelevant to the issue tendered by the complaint, and might, probably, have been treated as surplusage.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

Action by Bart Armstrong against J. B. Poe. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

*Mr. J. N. Booth,* for Appellant.

*Messrs. Downing & Stephenson,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a judgment of the district court of Cascade county. The second cause of action set forth in the complaint, which is the only one under consideration, is as follows:

"That on or about the first day of October, 1905, plaintiff sold and delivered to the defendant at his special instance and request five thousand two hundred and twenty-four (5,224) head of sheep at the agreed price of twelve thousand five hundred and fifty dollars ($12,550), which amount the defendant then and there promised and agreed to pay the plaintiff, although he has wholly neglected, failed, and refused to do so; that the whole thereof is now past due and wholly unpaid; that no part or parcel of the same has been paid."

The defendant's answer thereto is as follows: "Defendant, answering plaintiff's second cause of action, denies that the plaintiff sold and delivered to the defendant five thousand two hundred and twenty-four (5,224) head of sheep at the agreed price of twelve thousand five hundred and fifty ($12,550), and denies that the defendant agreed to pay to the plaintiff the sum of twelve thousand five hundred and fifty dollars ($12,550), and denies that the plaintiff sold defendant any sheep, or delivered to him any sheep, or that defendant agreed to pay plaintiff any sum of money, except as hereinbefore alleged, and

defendant denies each and every other allegation contained in
plaintiff's said second cause of action, except as the same is
hereby specifically admitted.

"Secondly.   Further answering said second cause of action,
defendant alleges that on or about the first day of October, 1905,
plaintiff and defendant entered into an agreement by the terms
and conditions of which the plaintiff and one J. C. Bike would
go to Armington, Montana, where plaintiff had a large band of
sheep, and that they would cull out one carload of lambs out
of the said band of sheep, which said lambs were to be deliv-
ered to the defendant on board cars at Armington, and were
to be consigned to the defendant at Miles City, Montana.

"Thirdly.   That it was expressly understood and agreed that
the defendant should not pay for the said lambs so culled out
and shipped to him at Miles City, Montana, until he received
an invoice from the said J. C. Bike, showing the number of
sheep so shipped to him, and that it was agreed and understood
between the plaintiff and the defendant that, when said lambs
were so shipped, and said invoice was received, the defendant
would pay to the plaintiff the sum of one dollar and 25/100
($1.25) per head for all lambs so shipped.

"Fourthly.   That, under and by virtue of said agreement,
the said plaintiff and the said J. C. Bike went to Armington
and culled out and loaded upon the cars and shipped to the
defendant four hundred and twenty (420) lambs, and that with-
in a reasonable time thereafter the said J. C. Bike mailed to this
defendant an invoice of said shipment, showing the number
of lambs so shipped.

"Fifthly.   That the defendant did not receive the said in-
voice until the fourteenth day of November, 1905.

"Sixthly.   That upon the receipt of said invoice the defend-
ant became indebted to the plaintiff in the sum of five hundred
and twenty-five dollars ($525.00) on account of the shipment of
said lambs, in accordance with the terms of said contract, and
that he has since been ready and willing to pay the said sum
of five hundred and twenty-five dollars ($525.00), and that he

does now herewith tender and pay into court the said sum of five hundred and twenty-five dollars ($525.00)."

On the trial plaintiff testified as follows: "When Mr. Poe left me at Conrad, we had arrived at an agreement by which he agreed to purchase all the lambs which I had at Armington and Great Falls at the price of two dollars and fifty cents per head, with a ten per cent cut at half price; and it was further agreed that Mr. Bike was to act as Poe's agent to come to Great Falls and to Armington to look at the sheep and to count them out and receive them, and that Bike was to pay for them by a draft drawn upon Silas Palmer & Co., to which he (Bike) was to sign the name of J. B. Poe and sign his own name across the face of the draft with an 'O. K.' There were no further conditions to the contract." It also appears that two carloads of these sheep were at Great Falls and not at Armington, and these two carloads were never delivered to Bike, but were shipped to Chicago by plaintiff in his own name. Plaintiff further testified that he delivered a part of the sheep to Bike at Armington. That Bike received them and billed them from J. B. Poe, Armington, to J. B. Poe, Chicago; but before these sheep left Armington he learned that another draft given him by Poe had not been paid in Chicago, and thereupon entered into another agreement with Bike, by the terms of which Bike allowed him to change the billing from Poe's name to his own. And that thereafter the sheep so billed, together with the Great Falls sheep, were shipped to Chicago, and, under plaintiff's telegraphic directions, delivered to Rice, Collings & Co., by whom they were sold for plaintiff; he receiving $8,000 for them, with which amount he had credited Poe's account. He also testified that the draft was to be delivered after the sheep were counted and received; that Poe told him that Bike would go to Armington as Poe's agent, with full authority to count and receive the sheep, and settle the transaction entirely and make the draft in payment of the sheep; that he did not ask Bike to make out a draft and pay him for the sheep; that the draft that should have been made on the sheep was not mentioned

between Bike and himself; and that Bike never refused to give him a draft, and he (plaintiff) did not ask him for it, and would not have taken it if Bike had given it to him. The foregoing is the substance of the plaintiff's own testimony.

At the conclusion of plaintiff's case, defendant interposed a motion for nonsuit, two paragraphs of which read as follows:

"First. Upon the ground that the undisputed evidence of the plaintiff shows that he agreed to accept in payment for the sheep sued for a sight draft; and there is no evidence to show that the defendant ever refused to pay him; but the evidence, upon the contrary shows that the plaintiff upon his part refused to accept the draft and carry out his contract.

"Secondly. Upon the ground that the undisputed evidence of the plaintiff shows that there was never any delivery of the sheep sued for or described in his second cause of action, and at most there was only an executory contract for the sale between the parties to this action, which was never executed, and the evidence shows that the title of the sheep never passed from Armstrong to Poe." This motion for a nonsuit was granted, and judgment entered for the defendant, from which judgment plaintiff appeals to this court.

We are of opinion that the order of nonsuit was properly entered. From the foregoing statements of the plaintiff, it is apparent that the contract between the parties called for the delivery of the Armington and Great Falls sheep to the defendant. Plaintiff delivered the Armington sheep, but refused to, and never did, deliver the Great Falls sheep, and afterward, and before the entire contract and delivery had been performed by him, took back the possession of the Armington sheep. Under these circumstances, plaintiff cannot be heard to say he delivered the sheep to defendant according to the contract, and he was properly nonsuited.

Let it be observed, also, that plaintiff had alleged in his complaint that he had sold and delivered the sheep to the defendant at the agreed price of $12,550, which amount was unpaid. The proof shows an entirely different contract, to the

effect that the agreement was that defendant should pay for these sheep by a draft drawn upon Silas Palmer & Co., which draft was never tendered or demanded. The actions of plaintiff, as disclosed by his own testimony, show that his conduct was such that a tender of the draft in conformity with the contract would have been useless, and therefore no tender was necessary.

The answer of the defendant puts in issue all the allegations of the complaint, and upon the trial plaintiff offered evidence of an agreement other than that set forth in the complaint. There was a variance amounting to a failure of proof.

But it is contended by the plaintiff that nonsuit should not have been entered, for the reason that the answer admitted an indebtedness of $525 for sheep shipped to Miles City. The pleadings in this case are in such condition that it is almost impossible to ascertain therefrom what the intention of the defendant was in alleging this so-called affirmative defense, to which there was no reply on plaintiff's part. It will be noted, however, that defendant, while ingenuously admitting an indebtedness to the plaintiff, does allege that the same did not become due until November 14, 1905, which was almost a month after the bringing of the action. There is nothing in the allegation of this affirmative matter showing that the contract relating to the four hundred and twenty sheep was any part of the main transaction, and the district court would probably have been justified in treating this so-called affirmative matter as surplusage. It seems to be irrelevant to the issue tendered by the complaint, without some allegation connecting it with the contract as alleged by the plaintiff.

The judgment of the district court of Cascade county is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

Rehearing denied October 9, 1907.