BLACKFORD, Trustee, Respondent, v. JUDITH BASIN COUNTY et al., Appellants.

(No. 7,963.)

(Submitted December 13, 1939.  Decided January 17, 1940.)

[98 Pac. (2d) 872.]

580

*Mr. H. O. Vralsted,* County Attorney for Judith Basin County, for Appellants, submitted a brief and argued the cause orally.

*Mr. John B. Muzzy,* for Respondent, submitted a brief and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, appearing as. *Amicus Curiae,* and *Mr. Mark H. Derr,* Assistant Attorney General, submitted a brief; *Mr. Derr* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This is an appeal by the defendants Judith Basin County and the Board of County Commissioners thereof from a judgment of the district court of that county under the Declaratory Judgments Act.

On May 8, 1936, the plaintiff became the owner of certain lands in Judith Basin County by sheriff's deed on foreclosure of mortgage in an action in which he was one of the plaintiffs. Six days later an action was instituted by the county against the plaintiff and others, under the provisions of sections 2215.1 to 2215.9, Revised Codes, inclusive, to obtain a tax deed on account of unpaid taxes for the years 1930 to 1935, inclusive. That action resulted in a judgment for the county on September 14, 1936, and two days later, in accordance therewith, the county treasurer issued to the county a tax deed, in which the consideration stated was $3,557.61, the amount named in the judgment as accrued taxes for the years 1930 to 1935, inclusive, with penalties and with interest to date of judgment. The taxes on the said land for 1936 had been levied and had become a lien

upon the land but were not collected for the reason that prior to their due date the county had acquired title. No levy was made for 1937. The county retained title to and possession of the property at all times until December 22, 1937.

In the latter part of November, 1937, the county commissioners had the property appraised and advertised for sale at $5,040, being $3 per acre. In accordance with section 2235, Revised Codes, the advertisement stated that "If terms are desired, at least twenty per cent of the purchase price must be paid in cash, the balance to be paid in not more than five years with four per cent interest upon the unpaid purchase price." On December 22, 1937, while the county was still owner of the land, the plaintiff appeared before the board of county commissioners and made written offer and demand to purchase the land for $3,557.61, the amount named in the tax proceedings judgment and the tax deed as the amount of taxes for the years 1930 to 1935, inclusive, with penalties and interest, and tendered a twenty per cent. cash payment of $711.52, together with a signed contract for the payment of the balance in deferred payments of equal amounts extending over a period of five years with interest at four per cent. per annum, in the form prescribed by the State Board of Equalization for sales of land by counties on deferred payments. He asserted that right under the last sentence of the fifth paragraph of section 2235, which provides that at any time prior to the county's sale of tax deed acquired property the former owner may purchase it for the taxes, penalties and interest for which it has been sold to the county. The board rejected plaintiff's demand and tender upon the ground that the statutory provision in question was unconstitutional.

Subsequently on the same day, the Pioneer Ranch Company, Incorporated, offered to buy the property, together with 120 acres additional, for the full appraised value of $3 per acre, and tendered the sum of $1,008 as the twenty per cent. cash payment. Defendant board accepted the offer and issued a contract to the Ranch Company for the payment of the balance over a term of five years with interest at four per cent. in accordance with the general provisions of section 2235.

On December 31, 1937, the plaintiff filed his complaint in this action, setting up the above facts and praying judgment that the provision of section 2235 in question is valid, and that the actions of the defendants county and board in refusing his demand of purchase and in thereafter selling the property to the defendant Ranch Company, were unlawful and void. The last-named defendant defaulted and its default was entered. The defendants county and board of county commissioners appeared, and trial was had on the complaint, answer and reply.

There were no issues of fact nor conflicts of evidence. The court made very complete and excellent special and general findings of fact and conclusions of law in plaintiff's favor, and in accordance therewith rendered judgment against defendants county and board of county commissioners, appellants here, for the cancellation of the contract with the defendant Pioneer Ranch Company, Incorporated, and for the acceptance of plaintiff's offer to purchase the land under the provisions of section 2235.

It is unnecessary to lengthen this decision by detailing the pleadings, the evidence, and the court's findings and conclusions. The questions presented by the parties are these:

(1) Was plaintiff's preferential right to purchase the land foreclosed and barred by the judgment in the tax deed proceeding, by reason of sections 2215, 2215.5, 2215.7 and 2215.9?

(2) Was plaintiff entitled ''to redeem said lands by paying the taxes that were delinquent upon said lands for the years 1930 to 1935, inclusive'' (with penalties and interest to date of tax deed), ''without payment of the 1936 taxes and in evasion of'' the 1937 taxes?

(3) Was Chapter 33 of the 1933–34, Extraordinary Session Laws, which amended section 2235 to grant former owners a preferential right to purchase tax acquired property, repealed by Chapter 63 of the 1937 Session Laws?

(4) Is the said provision permissive only and not mandatory upon defendant board?

(5) Is the said Chapter 33 invalid under section 11 of Article VII of the Constitution of Montana, as not within the sub-

jects specified in the governor's proclamation or recommendations?

(6) Is it invalid under section 26 of Article V of the Constitution of Montana, as a special law "authorizing the * * * extension or impairing" of liens?

(7) Is it invalid under section 39 of Article V of the Constitution of Montana, as postponing an obligation to the state and defendant county?

(8) Is it invalid under section 39 of Article V of the Constitution of Montana, as remitting, diminishing or extinguishing an obligation to the state and defendant county; or under section 6 of Article XII thereof, as releasing or discharging property from its proportionate share of state taxes; or under section 11 of Article XII thereof as not uniform taxation upon the same class of property within the state or county; or under section 1 of Article XIII thereof as making a "donation or grant" of taxes?

(9) Is it violative of section 1 of Article XIII of the Constitution of Montana as granting a new right after issuance of the tax deed to the county?

Prior to the amendment of section 2235 by the enactment of ▮ Chapter 33, Extraordinary Session Laws of 1933–34, that section had provided for the appraisement, advertisement and sale of property acquired by counties by tax deed, for cash, or upon terms with at least twenty per cent. in cash and the balance in installments over not to exceed five years with interest upon deferred payments at the rate of six per cent. per annum. By the enactment in question, the Extraordinary Session of 1933–34 reduced to four per cent. the interest in the case of ordinary sales under the section, and added the following, which is the provision in question here: "Provided further that at any time before such sale, the taxpayer whose property has been deeded to the county may purchase such property by payment to the county of the full amount of the taxes, penalties and interest for which such property was sold and such purchase and payment may be effected by an installment contract with annual payments, as provided in section 4465.9."

Section 4465.9, which is referred to by the amendment, is the general provision authorizing boards of county commissioners to sell county property, however acquired, which is not necessary in the conduct of the county's business or the preservation of its property. It provides for appraisement and sale upon the same terms as section 2235, except that the rate of interest upon deferred payments is six per cent. per annum instead of four per cent.

It is apparent that section 2235 as so amended, being an Act relating solely to sales of tax acquired property, is controlling in such cases, and that section 4465.9 relates in general only to county property acquired other than by tax deed proceedings, except in so far as it is made applicable to purchases of tax acquired property by the former owner under the preferential right accorded him by section 2235. In other words, the four per cent. rate of interest provided by section 2235 is effective upon the purchase of tax acquired property at ordinary sales, but by reference to section 4465.9 the six per cent. rate provided by that section is effective upon the former owner's preferential purchase of tax acquired property.

It would seem that plaintiff's tender was not strictly adequate because it included an offer to pay interest only at the four per cent. rate, rather than at the six per cent. rate applicable to preferential purchases by former owners. However, the insufficiency of the offer is immaterial for two reasons, and we call attention to it here only to make it clear that the six per cent. interest rate is applicable to plaintiff's contract.

The insufficiency of the tender is immaterial, first, because ▮ under the general law (17 C. J. S., Contracts, p. 991, sec. 487; 62 C. J. 663, sec. 6; 12 Am. Jur. 891, sec. 334) and under the provisions of section 10682, Revised Codes, objections to a tender are waived unless specified at the time; and, second, because it is waived where the tenderee's attitude would make the tender a vain and idle ceremony. (17 C. J. S., Contracts, p. 986, sec. 481; 62 C. J. 659, sec. 5; 12 Am. Jur. 889, sec. 333; *Davies* v. *Montana Auto Finance Corp.*, 86 Mont. 500, 284 Pac. 267; *Sutton* v. *Masterson*, 86 Mont. 530, 284 Pac. 264; *Oscarson* v.

*Grain Growers Assn.*, 84 Mont. 521, 277 Pac. 14; *Hills* v. *Mutual Oil Co.*, 65 Mont. 317, 211 Pac. 314; *Baum* v. *Northern Pac. Ry. Co.*, 55 Mont. 219, 175 Pac. 872; *Old Kentucky Distillery* v. *Stromberg-Mullins Co.*, 54 Mont. 285, 169 Pac. 734; *Winslow* v. *Dundom*, 46 Mont. 71, 125 Pac. 136; *Long* v. *Needham*, 37 Mont. 408, 96 Pac. 731; *Armstrong* v. *Poe*, 35 Mont. 557, 90 Pac. 758; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918; *Christiansen* v. *Aldrich*, 30 Mont. 446, 76 Pac. 1007.)

We therefore proceed to consider the appellants' contentions, the first of which is that plaintiff's preferential right to purchase was foreclosed by the tax deed proceeding. The contention cannot be sustained, since the preferential right to purchase can never arise until his title has been divested by tax deed. It cannot, therefore, be said that by the proceeding, which merely authorized issuance of tax deed, he was barred of the right to repurchase. By his default in that suit he lost only the right to object to the issuance of the tax deed, and to the consequent loss of right, title and interest.

The second question is whether plaintiff is entitled "to redeem said lands by paying the taxes that were delinquent upon said lands for the years 1930 to 1935, inclusive" (with penalties and interest to date of tax deed), "without payment of the 1936 taxes and in evasion of" the 1937 taxes. He was not attempting to redeem the land. The taxes had been cancelled by the issuance of the tax deed, and his title had been completely divested; there were no taxes to pay and nothing to redeem. Furthermore, there were no 1936 or 1937 taxes to pay or evade, since county property is exempt from taxation (sec. 2, Art. XII, Const. Mont.), and whether the land is purchased by the plaintiff under his preferential right as former owner, or by the defendant Pioneer Ranch Company, Incorporated, under the general sales provision, it will be equally free of taxes for the period during which it was owned by the county and therefore was non-taxable.

We will next consider the contention that Chapter 33 of the 1933-34 Extraordinary Session Laws was repealed by Chapter 63 of the 1937 Session Laws. The last-mentioned Chap-

ter was an amendment of section 2215.9, which, as so amended, provides that tax deeds shall convey to the grantee absolute title to the lands free of all encumbrances and clear of any and all claims by the defendants to tax deed suits "except the lien for taxes which may have attached subsequent to the sale and the lien of any special, local impróvement, irrigation and drainage assessments levied against the property payable after the execution of said deed," etc.

It is argued that by the re-enactment of that section with amendments as Chapter 63 in 1937, the property was freed from "any and all claims" of the prior owners, including plaintiff's preferential right of purchase under the 1933 Act, and that thereby the latter was repealed for purposes of this suit, since plaintiff did not attempt to make the preferential purchase until afterward.

The contention cannot be sustained in view of the fact that the only amendment of section 2215.9 effected by Chapter 63 of the 1937 legislature was the addition of the words "irrigation and drainage assessments" in the portion quoted above. Section 93, Revised Codes, provides: "Where a section or a part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form, but the portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment."

It is next argued that the provision in question does not require the board to sell the land to the former owner, but is only permissive in form, since the word "may" is used. The provision is permissive, but the permission is not to the board to sell, but to the former owner to buy. Obviously, the statutory permission to buy necessarily imposes upon the board a mandatory obligation to sell.

The next contention is that Chapter 33 of the 1933–34 Extraordinary Session Laws is void as not within the governor's proclamation and messages. Section 11 of Article VII of the state Constitution provides that the legislature in extraor-

dinary session "shall have no power to legislate on any subject other than those specified in the proclamation, or which may be recommended by the governor," etc. The provision is, of course, prohibitory, not having been expressly declared otherwise. (Sec. 29, Art. III, Const. Mont.) Nevertheless, it is the duty of the courts to uphold the constitutionality of a statute unless its invalidity is made manifest beyond a reasonable doubt. (*Spratt* v. *Helena Power Transmission Co.*, 37 Mont. 60, 94 Pac. 631; *State* v. *Alderson*, 49 Mont. 387, 142 Pac. 210, Ann. Cas. 1916B, 39; *Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495; *State ex rel. Du Fresne* v. *Leslie*, 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329.)

Among the purposes specified in the proclamation convening the legislature in special session was "Ninth—To amend the law in relation to the time for redeeming real estate from tax liens."

Chapter 33 as enacted by the extraordinary session and approved by the governor does not actually extend the time of redemption from tax liens, but does, under certain conditions, afford an equivalent relief by enabling the former owner to buy back his property for the amount of taxes, penalties and interest, if it shall not theretofore have been disposed of by the county. To this extent the Act in question is properly adapted to afford the taxpayer relief envisioned by the governor, although not effected exactly in the manner contemplated by him.

It has been held that the word "subject," as used in like constitutional provisions, is to be construed freely to include matters relating to, germane to, and having a natural connection with the subject proper. (*Kemp* v. *State*, 35 Okl. Cr. 128, 248 Pac. 1116; *Brinsfield* v. *State*, 38 Okl. 189, 259 Pac. 875.)

Obviously, the purpose of Governor Cooney was to afford certain taxpayer relief, and the fact that the legislature preferred to afford it by a preferential right to repurchase, rather than by postponement of the time in which to redeem from tax sale, should not be seized upon to defeat the executive and legislative purpose.

In 1919 the governor said in a message to the extraordinary session: "The mayor of the city of Butte has directed my attention to the fact that the law having to do with 'department of police' has been so construed as to work an injustice upon cities. He states that the city of Butte has paid out more than one hundred thousand dollars in salaries to discharged and suspended policemen, for which no service was rendered. He considers the matter of emergent importance and asks that I submit the same to you for consideration. There ought to be amendment to the general law so that such conditions may be obviated in the future."

The legislature then proceeded to enact Chapter 11, Laws 1919, Extraordinary Session, section 1 of which provides: "Actions to recover salaries by members of the Police Department of Cities must be commenced within six (6) months after the Cause of Action shall have accrued."

It was contended in *Sweeney* v. *City of Butte*, 64 Mont. 230, 208 Pac. 943, 945, that the provision in question was invalid as being a statute of limitations and not within the scope of the governor's message. But the court said: "The provision tends to accomplish the object specified in the message. * * * We are of the opinion that said Chapter 11 is not subject to the objection raised."

In *State ex rel. Anaconda Copper Min. Co.* v. *Clancy*, 30 Mont. 529, 77 Pac. 312, 314, this court, after calling attention to the fact that the governor is not part of the lawmaking body, said: "It is fairly deducible from an examination of the proclamation that the Governor's purpose in calling the Legislative Assembly in extraordinary session was to secure, if possible, the enactment of some measure whereby a district judge, charged with entertaining bias and prejudice against a litigant, to such an extent as to engender the belief in the litigant's mind that he could not have a fair and impartial trial of his cause, should not be permitted to sit and hear the same. It was not the Governor's purpose to advocate any particular measure, but, with this subject for consideration laid before the lawmaking power, to permit it freely to exercise its legislative discretion in framing

any measure which might accomplish the result sought in calling the members together. To say that because, in his proclamation, the Governor specified 'general legislation by which the bias and prejudice of district judges be made a disqualification of such judges to try any case,' etc., no law enacted in pursuance thereof would be valid which did not expressly declare bias and prejudice a disqualification, would be to lodge in the Governor greater powers than was ever contemplated by the constitutional provision under consideration. He cannot in advance tie the hands of the Legislature. He cannot submit the draft of a proposed bill, and direct the Legislature to enact it, or no measure at all; but any enactment which will meet the ends sought to be accomplished in his call must be deemed to be embraced within the limits of the subjects submitted for consideration. That a liberal rule for the interpretation of these proclamations has been generally applied, to the end that the legislation enacted in pursuance thereof be operative, is apparent from the adjudicated cases.'' (Citing decisions.)

While the enactment in question here is not entirely analogous to the ones treated in the *Sweeney* and *Clancy Cases,* the reason for our conclusion is the same as enunciated in the latter case, namely that ''any enactment which will meet the ends sought to be accomplished in his call must be deemed to be embraced within the limits of the subjects submitted for consideration.''

There is good reason for the established legislative processes, by which proposed measures are duly analyzed, considered and debated. It may well be that the legislature determined that some remedy against a permanent loss of real property for taxes should be afforded, but that the preferable method, or perhaps the only proper method under the conditions, was by an opportunity to reacquire the title, rather than by extending the time within which title should be retained. By that method the end sought could be accomplished, but if the former owner should not desire to avail himself of the relief, the county's right to sell the property to other buyers, and thus obtain necessary funds for its purposes, would not be further delayed. It is not to be wondered at that this consideration should have

occurred to the legislature during its deliberative processes, rather than to the governor in determining the ends desired to be accomplished by the session, and we do not feel that the difference in method should be seized upon to defeat the clear concurrent purpose of the legislative and executive branches to afford the essential relief contemplated by them. Therefore the court is not constrained to hold the statute unconstitutional.

The next question is whether the enactment is objectionable ▮▮▮ under section 26 of Article V of the state Constitution as a special law authorizing the extension or impairment of tax liens. Obviously it does not extend or impair tax liens, for it comes into effect only when the tax liens have already been absolutely terminated by tax deeds. And it is a general, and not a special law, for it relates to all instances coming within a general class of situations, namely all those in which real estate has been taken by tax deed after the effective date of the Act, and still is held by the county. "Special laws are those made for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances; * * * ." (1 Lewis' Sutherland on Statutory Construction, 2d ed., 358.) The classification not being capricious, arbitrary, or without proper basis, the Act is not a special law in violation of this constitutional provision. (*Equitable Life Assur. Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062; *Tonn* v. *City of Helena,* 42 Mont. 127, 111 Pac. 715, 36 L. R. A. (n. s.) 1136; *State ex rel. Bray* v. *Long,* 21 Mont. 26, 52 Pac. 645; *Leuthold* v. *Brandjord,* 100 Mont. 96, 47 Pac. (2d) 41; *State* v. *Bays,* 100 Mont. 125, 47 Pac. (2d) 50.)

The seventh contention, that the Act is invalid under section ▮▮▮ 39 of Article V of the state Constitution as postponing an obligation to the state and county, is groundless; for, as above stated, the provision is applicable only where the obligation has been extinguished entirely by issuance of tax deed. The fact that the land purchased on deferred payments is by the former owner no more constitutes postponing the tax obligation than where the purchase is by another. In either case the collection of money is deferred, but in neither is the collection that

of a postponed tax obligation; it is the collection of the purchase price of land.

The eighth question is whether the Act is invalid under section 39 of Article V, sections 6 or 11 of Article XII, or section 1 of Article XIII of the state Constitution, as remitting, diminishing or extinguishing a public obligation, releasing or discharging property from its proportionate share of taxes, violating the requirement of uniform taxation of the same class of property, or making a donation or grant of taxes. All of these points are based upon the fact that plaintiff will reacquire the property without payment of the 1936 tax, which was levied but never accrued because of the prior issuance of tax deed, or the 1937 tax, which was never levied. However, the tax immunity complained of is that of the county and not of plaintiff, and it results from the provision of section 2 of Article XII of the state Constitution, to the effect that county property shall be exempt from taxation. Since no taxes attached to any county property during the period of the county's ownership, there was no failure of uniform taxation of property within the same class, and therefore no tax obligation to be remitted, diminished, extinguished, released, discharged, donated or granted.

The final contention, that the enactment is violative of section 1 of Article XIII, as granting a new right after issuance of the tax deed, is groundless; for the right was granted by the enactment and approval of the statute on January 8, 1934, before the tax deed was issued on September 16, 1936. The owner's preferential right of repurchase existed when the deed was taken, and the county acquired title subject to that right. Prior to issuance of deed all the county had was an inchoate right which could ripen into title only upon compliance with the statutory requisites and procedure. (*State ex rel. City of Billings* v. *Osten,* 91 Mont. 76, 5 Pac. (2d) 562.)

The fact that tax sale was made prior to the passage of the Act was immaterial, since the tax sale certificate was issued to the county and was never assigned to an individual purchaser, as in the *Osten Case,* supra; and there was consequently no con-

tract between the state and an individual purchaser which would be impaired by the new Act.

No error having been committed by the trial court, and the Act in question not being invalid either by unconstitutionality or by repeal, the judgment is hereby affirmed.

ASSOCIATE JUSTICES MORRIS, ARNOLD, ERICKSON and ANGSTMAN concur.

Rehearing denied February 14, 1940.