STATE ex REL. JENSEN LIVESTOCK CO., APPELLANT, v. HYSLOP, COUNTY TREASURER, ET AL., RESPONDENTS.

(No. 8,151.)

(Submitted October 15, 1940.  Decided October 25, 1940.)

[107 Pac. (2d) 1088.]

*Mr. W. B. Leavitt,* for Appellant, submitted an original and a reply brief, and argued the cause orally.

*Mr. I. W. Choate,* County Attorney, and *Mr. Ralph J. Anderson,* Counsel for the State Board of Equalization, for Respondents, submitted briefs, and argued the cause orally.

*Mr. George W. Farr, Amicus Curiae,* submitted a brief in support of motion for rehearing.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Plaintiff appeals from a judgment entered against it on application for a writ of mandate to compel the defendants Custer county and the county treasurer thereof to permit relator Jensen Livestock Company to redeem land formerly owned by it but lost by tax deed.

Briefly the facts are that relator was the owner of certain lands in Custer county and permitted the taxes to go unpaid for 1930 and all subsequent years; in 1931 a tax sale was duly held for the 1930 taxes, the land was sold and a tax sale certificate was issued to the defendant county; on March 15, 1940, a tax deed was taken by Custer county, and on June 5, 1940, the land was sold to two purchasers; thereafter, on June 8, 1940, relator applied to the county treasurer to redeem the land from tax sale and tendered the amount of all taxes which had accrued against the land beginning with the year 1930, but without penalties and interest. Its offer being refused, this action was instituted against Custer county and its treasurer, and on the trial court's motion the two purchasers were brought in as defendants.

No question is raised concerning the validity of the tax, tax deed, or land sale proceedings. There were no issues of fact and appellant's argument is solely on questions of law under the specification that the court erred in rendering judgment for defendants and against plaintiff.

The contention is that notwithstanding the issuance of a tax deed, which discharges the tax lien and leaves nothing from which to redeem (*Blackford* v. *Judith Basin County,* 109 Mont. 578, 98 Pac. (2d) 872, 126 A. L. R. 639), and notwithstanding the county's sale of the property to purchasers, the former owner can still under Chapter 11 of the 1939 Session Laws "redeem" his property from the tax sale. Several ques-

tions are raised on this appeal, among them the distinction between redeeming land from a tax sale and repurchasing it after issuance of a tax deed. (See *Blackford* v. *Judith Basin County*, supra.) But it will be necessary to consider only the one question, whether Chapter 11 of the 1939 Session Laws constitutes a Moratorium Act extending the time of redemption to February 1, 1941.

"Moratorium" is defined by Webster's New International Dictionary (Second Edition, Merriam Webster) as: "A period of permissive or obligatory delay; specifically, (*Law*) a period during which an obligor has a legal right to delay meeting an obligation," etc. The question is whether the Act delayed the taking of tax deeds or otherwise extended the time for redeeming lands from tax sale, or whether it merely gave relief from penalties and interest where redemptions made under the general laws were effected prior to the date named.

If Chapter 11 is not a Moratorium Act, the general statutes apply, making it the duty of the board of county commissioners, at its discretion, to cause the county clerk to apply for and obtain a tax deed (sec. 2209.1, Rev. Codes), at any time after application for such tax deed becomes permissible (sec. 2201) unless redemption is made in time. Since the tax sale was held in 1931 such application had long ago become permissible under the latter section unless further delayed by the chapter in question or some other remedial statute. It thus becomes necessary to examine the various remedial statutes.

The first appears to have been Chapter 88 of the 1935 Session Laws. The title and sections 1, 2, 3 and 6, the material parts of the Act, are as follows:

"An Act to Permit Real Property to be Redeemed From Tax Sale by Paying the Original Tax, Provided Such Original Taxes be Paid on or Before December First, 1935, and Relating to the Time of Taking Tax Deed."

"Section 1. That from and after the passage and approval of this Act, any person having an interest in real estate heretofore sold for taxes to any county, or which has been struck off to such county when the property was offered for sale and

no assignment of the certificate of such sale has been made by the County Commissioners of the county making such sale, shall be permitted to redeem the same by paying the original tax due thereon, and without the payment of any penalty or interest thereon. Such redemption of real estate must be made on or before the first day of December, 1935, and if such redemption is not made by the first day of December, 1935, then redemption can only be made by payment of the original tax with accrued interest penalties and costs as now provided by law. This Act shall not apply to the purchaser of any certificate of sale made prior to the passage and approval of this Act.

"Section 2. County Treasurers and City Treasurers in their respective counties and cities shall cause to be published in at least one issue of the official newspaper of such county or city a notice of such right of redemption *and extension of time,* such notice to be published within sixty (60) days from the approval of this Act. It shall be the duty of the County Treasurer of each county to mail notice to delinquent taxpayers to their last known address advising them of their rights under this chapter within sixty (60) days after the approval of this Act.

"Section 3. County and City Treasurers shall not make assignments of tax sales until after the first day of December, 1935. Providing further that any case where application for a tax deed has been made that this Act shall not apply."

"Section 6. This Act stays the operation of all Acts and parts of Acts in conflict herewith until the first day of December, 1935, but does not otherwise affect such Acts or parts of Acts."

It will be noted that the title expressed two purposes: The first, to permit redemption to be made by paying the tax without interest or penalties, if made by December 1, 1935; the second, to legislate concerning the time of taking tax deeds. Section 1 effected the first purpose. The second purpose was not effected in exact words, but section 2 made it the duty of the county treasurer to give public notice "of such right of redemption and *extension of time,*" section 3 expressly forbade

the assignment of tax sale certificates by counties until after December 1, 1935, and section 6 expressly stayed the operation of Acts and parts of Acts in conflict with the chapter until the same date. Whether the last section stayed the application for and issuance of tax deeds need not be determined here, but obviously that must have been the intent.

The second remedial Act was Chapter 70 of the 1937 Session Laws, which was virtually identical with the first remedial Act except that the preamble was omitted, that the dead line for redemption without penalties and interest was extended to December 1, 1938, and that certain minor changes, not here material, were made.

The third remedial Act was Chapter 11 of the 1939 Session Laws, the one here in question. The only portions material here are the title and section 1, which are as follows:

"An Act to Permit Real Property to Be Redeemed From Tax Sale by Paying the Original Tax, Provided Such Original Taxes Be Paid on or Before February 1, 1941."

"Section 1. That from and after the passage and approval of this Act, any person having an equitable or legal interest in real estate heretofore sold for taxes to any county or which has been struck off to such county when the property was offered for sale and no assignment of the certificate of such sale has been made by the county commissioners of the county making such sale, or on which taxes are delinquent for the first installment of the year 1938, shall be permitted to redeem the same by paying the original tax due thereon, and without the payment of any penalty or interest thereon. Such redemption of real estate must be made on or before the first day of February, 1941, and if such redemption is not made by the first day of February, 1941, then redemption can only be made by payment of the original tax with accrued interest, penalties and costs as now provided by law. Provided, that nothing herein contained shall be construed so as to limit, restrict or prevent boards of county commissioners from ordering that applications be made for the issuance of tax deeds, or the issuance of tax ·deeds to counties, or the assignment of certificates of tax

sale by county or city treasurers during the period between the
time this Act takes effect and February first, 1941, it being
intended that during such periods, boards of county commiss-
ioners may order applications to be made for tax deeds and
that tax deeds may be issued to counties, and that county trea-
surers may assign certificates of sale in the same way, in the
same manner and to the same extent as though this Act had
not been passed. This Act shall not apply to the holder of any
certificate of sale other than a county.''

For all practical purposes, section 1 of Chapter 11, down to
the proviso, is identical with the first section of the first two
remedial Acts, except that it extends the dead line for redemp-
tion without penalties and interest to December 1, 1941. But
some important changes were made in the new Act which are
very significant as indicating the legislative intent. First: The
title omits any reference to the second purpose expressed in
the title of the first and second remedial statutes, namely, legis-
lation ''Relating to the Time of Taking Tax Deed.'' In other
words, the moratorium feature—legislation relating to the time
of taking tax deeds, and therefore affecting the period of re-
demption—was eliminated from the title, leaving only the reme-
dial provision that redemptions, if made by the date mentioned,
might be made by paying the taxes only, without penalty or
interest.

Second: Section 2 requiring the publication by county trea-
surers of ''notice of such right of redemption and *extension
of time,*'' and section 3 forbidding county treasurers to make
assignments of tax sale certificates until after the dead line,
and section 6 staying the operation of all Acts and parts of Acts
''in conflict herewith,'' were omitted from the Act.

Third: The proviso in section 1 provides that nothing therein
''shall be construed so as to limit, restrict or prevent boards
of county commissioners from ordering that applications be
made for the issuance of tax deeds, or the issuance of tax deeds
to counties, or the assignment of certificates of tax sale by
county or city treasurers during the period between the time
this Act takes effect and February first, 1941, it being intended

that during such period, boards of county commissioners may order applications to be made for tax deeds and that tax deeds may be issued to counties, and that county treasurers may assign certificates of sale in the same way,·in the same manner and to the same extent as though this Act had not been passed.''

In other words, not only did the 1939 legislature omit from the title and body of Chapter 11 all reference to ''Time of Taking Tax Deed'' and to ''extension of time'' and to stays of the operation of Acts and parts of Acts in conflict therewith, but it affirmatively provided that there should be no moratorium in the application for or the issuance of tax deeds or the sale of tax sale certificates.

Thus whatever effect the 1935 and 1937 enactments may have had as moratorium statutes was both by omission and express provision entirely eliminated from the 1939 enactment. Assuming, without holding, that the first two remedial statutes were effective, both in remitting interest and penalty up to certain dates and in providing a moratorium by an extention of time in which to redeem, it is wholly impossible to interpret Chapter 11 of the 1939 Session Laws as providing such moratorium. All it can be considered to have accomplished, regardless of the effect of the earlier remedial Acts, was the further extension to February 1, 1941, of immunity from the payment of interest and penalties, providing the county still held the tax sale certificate when the Act became effective. But since it was expressly provided that the assignment of tax sale certificates and the application for and issuance of tax deeds were to be made ''in the same manner and to the same extent as though this Act had not been passed'' it is utterly impossible to read into the Act any legislative intention to provide for a moratorium for redemption from tax sale liens. What more could the legislature have done to evidence the fact that it was granting no further tax moratorium, but was merely offering an inducement to pay the delinquent taxes by February 1, 1941, by waiving interest and penalties until that date?

Redemptions made not later than February 1, 1941, may under Chapter 11 be effected by paying only the tax without

interest or penalty if the certificates are then still held by the county. What the situation is with reference to interest and penalties in the case of tax sale certificates held by the county at the effective date of the Act, but thereafter assigned by it prior to the redemption, we cannot here decide. But since the application for and issuance of tax deeds under the general statutes is expressly permitted by the Act, without reference to the period during which interest and penalties are waived, it seems clear that no moratorium is provided by the Act for the payment of the taxes themselves or for the redemption of property from tax lien. The Act not only failed to forbid, but expressly permitted, the taking of tax deeds during the period in question; and the right of redemption was in the present case definitely terminated by the issuance of the tax deed. (*Blackford* v. *Judith Basin County,* supra.) There is no more ground for holding that a tax deed issued prior to February 1, 1941, for the nonpayment of taxes alone, does not terminate the right of redemption, than there is for holding that one issued after that time for the nonpayment of taxes with penalties and interest, does not terminate the right of redemption. The only relief provided by the Act from its effective date until February 1, 1941, is from the payment of interest and penalties, and not from the payment of the tax itself; and to take advantage of it the owner must pay the tax before the right of redemption has been terminated by the issuance of tax deed.

The judgment is therefore affirmed.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and ARNOLD concur.

### ON PETITION FOR REHEARING.

(Filed December 13, 1940.)

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The petition is hereby denied. There is ordinarily no need, upon denying a rehearing, to add anything to the decision

unless a modification is ordered. However, those who now favor a rehearing desire to add a statement explaining their change of opinion since concurring in the original unanimous opinion, and their statement suggests for the first time some arguments not raised by appellant, either in its original brief, its oral argument, or its petition for rehearing.

Briefly summarized, the dissenting argument is (1) that the title of the Act suggests an "obvious purpose" to provide a tax moratorium until February 1, 1941; (2) that if the proviso for taking tax deed meantime conflicts with that intent, it is unconstitutional as not within the title of the Act; (3) that it can be construed as within the title by construing the permitted tax deeds as in some way not terminating the right of redemption.

The title is: "An Act to Permit Real Property to Be Redeemed From Tax Sale by Paying the Original Tax, *Provided* Such Original Taxes Be Paid on or Before February 1, 1941." (Laws 1939, Chap. 11.) "Provided" means "if." The title certainly indicates an Act to permit real property redemptions by payment of *the tax only, if* the tax be paid by the date named. What is the converse? Simply that redemptions cannot be made by payment of *the tax only, unless* the tax be paid by the date named. Obviously, then, the title indicates that what is to expire on February 1, 1941, is not the right to redeem, but the right on redemption to pay *the tax only,* without interest or penalties. Certainly that is not equivalent to saying that the time for paying the tax is extended to that date, but only that immunity from interest and penalties is so extended. Not the privilege of paying the tax, but the privilege of not paying interest and penalties, was extended to February 1, 1941; and it is that privilege which expires on the date named.

The body of the Act clearly shows that it is not the right of redemption which expires on the date named, for after saying "such redemption [without interest and penalty] * * * must be made on or before the first day of February, 1941," it proceeds to say, in the same sentence, "and if such redemp-

tion is not made by the first day of February, 1941, then redemption can only be made'' by paying interest and penalties in addition to the tax. (Section 1.) When does the right to redeem expire under Chapter 11? If under the first part of the above sentence, the *right to redeem* by paying the tax without other lawful charges expires on February 1, 1941, then under the second part of the sentence, *the right to redeem* by paying all of those charges continues indefinitely after that date, because no limit is stated. There are not two kinds of redemption. We must read the clause relative to redemption *before* February 1, 1941, with the same meaning as that relative to redemption *after* that date. The only difference is in the exemption from, or liability for, the extra charges on redemption.

Section 2201, Revised Codes, limits the right of redemption to ''any time prior to the giving of the notice and the application for a deed''; sections 2215 and 2215.9, Revised Codes, provide that a tax deed shall convey absolute title ''free of all encumbrances'' (with certain reservations not material here). If the clause of Chapter 11 relative to redemption on or prior to February 1, 1941, impliedly amends those sections, so does the clause relative to redemption after that time. There is no logical difference. Either both clauses amend the sections, or neither amends them. It is no answer to say that the second effect is not within the title, for neither is the first within it; the point is that logically there is no difference between them.

There is nothing in Chapter 11 to suggest that tax deeds *issued before* February 1, 1941, are to have *any* less effect to terminate the right of redemption under sections 2201, 2215 and 2215.9, than tax deeds issued after that time. Thus if the Act impliedly amends or repeals those sections, it must do so with respect to redemptions made either before or after February 1, 1941, for there is no difference between them except as to the items to be paid. And neither result is within the title.

As shown in the original decision, the legislature in enacting this chapter very carefully omitted from its title and body all elements of moratorium or delay included in the prior remedial Acts; and not content with that, it expressly provided

that counties might proceed to take tax deeds. But according to the dissent we are now to consider the Act as impliedly amending or repealing the sections cited above, in spite of the fact that neither such result is mentioned in the title; and the reason given is that unless those things are done the Act is unconstitutional as not within "the obvious purpose of the Act" as expressed in the title. Courts have been criticized before this, for much less strained pronouncements of unconstitutionality. The Constitution (Art. V, sec. 23) does not say that Acts and parts of Acts are void if not within "the obvious purpose of the Act" as expressed in the title; but that they are void if the subject is not "expressed" or "clearly expressed" in the title. Are the implied repeals or amendments of sections 2201, 2215 and 2215.9 contended for by the dissent "clearly expressed" in the title?

Even if it were possible to find in the title an "obvious purpose" to enact a moratorium, may the courts now write into the body of the Act the moratorium feature so carefully excluded and negatived by the legislature, on the theory that without such procedure the Act is void as not within the subject expressed by the title? The constitutional provision sometimes justifies a finding that something in an Act is void as not within the title, but it can hardly justify a finding that an implied amendment of other statutes must be construed into the body of the Act, simply to fill out the purpose expressed in the title. If that were so, the legislature could accomplish the desired result by merely enacting a title and leaving it to the courts to do the rest; but that would hardly seem within the present trend, in view of the recent assaults upon judicial legislation.

It would appear doubly impossible to write in such a provision by judicial construction, where the legislature has expressly revoked the moratorium features, thus restoring the application of the regular tax deed statutes, and where the judicial construction is resorted to for the purpose of evading the necessary effect of the restored regular statutes; in other words, to seek by judicial construction to nullify the legislative in-

tent expressed by the enactment, in furtherance of a supposed contrary intent expressed by the title. That would certainly be the effect if we could in some way construe the expressly authorized tax deeds as not subject to sections 2201, 2215 and 2215.9.

Such result would obviously be unjustifiable, even if the supposed intent were clearly expressed by the title. But here a further immunity from interest and penalties until February 1, 1941, was clearly expressed, and the most that can plausibly be contended is that the legislature might possibly *in addition* have intended a tax moratorium to that date. Obviously, therefore, the legislature's very pointed negativing of any possible tax moratorium cannot be held void as not within the subject ''clearly expressed'' in the title. And if it could, we could not negative the negative by construing a positive, through the expedient of reading implied amendments or repeals into the body of the Act, so as to restore the moratorium feature.

The dissent states that in order to arrive at the majority result we must read into the title the words ''if paid before the issuance of a tax deed.'' That would be both unnecessary and meaningless if, as the dissent contends, the title already in effect means ''An Act to extend to February 1, 1941, the time for redemption''; for in that event a provision for taking tax deeds would be inconsistent with the purpose clearly expressed by the title. But since both the title and the body of the Act express an intent merely to remit penalties and interest *if* redemptions are made on or before February 1, 1941, without expressing any intent to effect a moratorium for tax payments until that date, it is not necessary to read anything into title or Act concerning tax deeds or any other extraneous subject.

We must construe all the laws together, for, unless expressly or necessarily repealed as inconsistent, all the laws must govern the courts in their consideration of cases. But to construe them together is not to read the old statutes into the title or body of the new. No tax moratorium is expressed in the title nor enacted in the body of Chapter 11, and the courts cannot supply it, wherever their sympathies may lie.

Any remedy for the legislature's failure to enact a further moratorium must come from the legislature, and the trial court cannot be placed in error for failing to supply it by the judicial construction contended for.

Remittitur shall issue forthwith.

ASSOCIATE JUSTICES MORRIS and ARNOLD concur.

MR. JUSTICE ANGSTMAN Dissenting:

Consideration of the motion for rehearing herein convinces me that the conclusion reached in the main opinion is erroneous.

In construing Chapter 11, Laws of 1939, we should give effect to the legislative intent so far as we are able to ascertain it from the language used. The title of Chapter 11 reads: ''An Act to Permit Real Property to Be Redeemed From Tax Sale by Paying the Original Tax, Provided Such Original Taxes Be Paid on or Before February 1, 1941.'' It should be noted that the title indicates that a person may redeem property from tax sale by paying the original tax, subject to the proviso that ''Such Original Taxes Be Paid on or Before February 1, 1941.'' It contains no other conditions. It seems to me that persons interested in the legislation during its journey through the legislative assembly would clearly have understood from the title of the Act, that it contemplated granting the right to property owners to effect a redemption by paying the original tax at any time before February 1, 1941. That is the clear meaning of the title.

The body of the Act is also clear in this respect. It provides in part: ''Such redemption of real estate must be made on or before the first day of February, 1941, and if such redemption is not made by the first day of February, 1941, then redemption can only be made by payment of the original tax with accrued interest, penalties and costs as now provided by law.'' It seems clear to me that the legislature intended to remit penalties and interest if the original tax is paid on or before February 1, 1941.

The difficulty in the case arises by virtue of the proviso contained in section 1 of the Act reading: "Provided, that nothing herein contained shall be construed so as to limit, restrict or prevent boards of county commissioners from ordering that applications be made for the issuance of tax deeds, or the issuance of tax deeds to counties, or the assignment of certificates of tax sale by county or city treasurers during the period between the time this Act takes effect and February first, 1941, it being intended that during such period, boards of county commissioners may order applications to be made for tax deeds and that tax deeds may be issued to counties, and that county treasurers may assign certificates of sale in the same way, in the same manner and to the same extent as though this Act had not been passed. This Act shall not apply to the holder of any certificate of sale other than a county."

It is my view that this proviso can be given effect without disturbing the obvious purpose of the Act. It simply means that tax deeds and assignments of tax sale certificates are issued subject to the right of redemption by paying the original tax on or before February 1, 1941. Unlike prior statutes which halted the taking of tax deeds this permits tax deeds to be taken. The obvious purpose of the proviso was simply to gain that much time as to property not redeemed on or before February 1, 1941. The statement "This Act shall not apply to the holder of any certificate of sale other than a county," was intended to have reference only to those who were holders of such certificates prior to the passage of Chapter 11. On the other hand, if the proviso is otherwise construed, i. e., if we construe it as shortening the time within which redemption may be made by paying the original tax, then the proviso must fall under section 23, Article V of the Constitution because as thus construed it would conflict with the title of the Act.

We have often had occasion to speak of the purpose of section 23, Article V. In general it is to advise persons interested in the legislation of the purpose of the proposed legislation and to prevent the legislature from inserting matters in the

body of the Act not embraced in the title and matters that would thus fail to attract attention. Such incongruous matter inserted in a bill would fall. (See *Jobb* v. *County of Meagher*, 20 Mont. 424, 51 Pac. 1034; *State* v. *Anaconda C. M. Co.*, 23 Mont. 498, 59 Pac. 854; *State* v. *Brown*, 29 Mont. 179, 74 Pac. 366; *State* v. *McKinney*, 29 Mont. 375, 74 Pac. 1095, 1 Ann. Cas. 579; *Hale* v. *Belgrade Co., Ltd.*, 74 Mont. 308, 240 Pac. 371.) In construing the title then we must give it the meaning that its language would convey to the man in the street. Any layman reading the title to the bill would readily conclude that it was allowing until February 1, 1941, within which to redeem property by paying the original tax. Any insertion in the body of the Act of a clause allowing someone to cut down the time conflicts with the title and would automatically fall under section 23 of Article V of the Constitution.

The opinion as written, in effect, has to read into the title the portion italicized: An Act to permit real property to be redeemed from tax sale by paying the original tax, *"if paid before the issuance of a tax deed, and* provided such original taxes be paid on or before February 1st, 1941.'' In other words the title of the Act contained but one proviso whereas the body of the Act contains two, and one of which conflicts with the one contained in the title, and, hence, could have no other effect than to mislead.

The fundamental error in our prior opinion is in holding that Chapter 11 is not a Moratorium Act. ''Moratorium'' is defined as ''a period during which an obligor has a legal right to delay meeting an obligation.'' (Webster's New International Dictionary.) Absent Chapter 11, relator had the legal right to pay its original tax for the year 1930 free from interest and penalty at any time up to November 30, 1930, and the tax for succeeding years on the 30th day of November of each year, except that the payment of one-half could be deferred until the last day of the following May. Chapter 11 extended the time to pay such taxes free from interest and penalty. That is the only purpose of Chapter 11. The only question before us is whether it extended the time until February 1, 1941, absolutely,

138

or only until that time unless the time was shortened by taking a tax deed before that time. I think for the reasons above stated, the time was extended until February 1, 1941, absolutely.

I think the judgment should be reversed.

MR. JUSTICE ERICKSON: I concur in the above dissenting opinion of Mr. Justice Angstman.